IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| JEFF IVAN M., § | |
| § | |
| Plaintiff, § | |
| § | No. 3:18-cv-1987-C-BN |
| V. § | |
| § | |
| NANCY A. BERRYHILL, § | |
| Acting Commissioner of Social Security, § | |
| § | |
| Defendant. § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Plaintiff Jeff Ivan M. seeks judicial review of a final adverse decision of the Commissioner of Social Security pursuant to 42 U.S.C. § 405(g). For the reasons explained below, the hearing decision should be reversed.

**Background**

Plaintiff alleges that he is disabled due to bipolar disorder, depression, insomnia, and nerve damage. After his application for supplemental security income ("SSI") benefits was denied initially and on reconsideration, Plaintiff requested a hearing before an administrative law judge ("ALJ"). That hearing was held on December 9, 2016. *See* Dkt. No. 12-1 at 78-104. At the time of the hearing, Plaintiff was fifty-five years old. He is a high school graduate, has a cosmetology license, and has past work experience in a hair salon. Plaintiff has not engaged in substantial gainful activity since December 14, 2014.

The ALJ found that Plaintiff was not disabled and therefore not entitled to SSI benefits. *See id.* at 24-33. Although the medical evidence established that Plaintiff suffered from hypertension, the ALJ concluded that the severity of that impairment did not meet or equal any impairment listed in the social security regulations. The ALJ further determined that Plaintiff had the residual functional capacity to perform the full range of medium work and had no past relevant work. Given his age, education, and exertional capacity for medium work, the ALJ determined that Plaintiff was not disabled under the Medical-Vocational Guidelines.

Plaintiff appealed that decision to the Appeals Council. The Council affirmed.

Plaintiff then filed this action in federal district court. Plaintiff challenges the hearing decision on two grounds: (1) Plaintiff did not effectively waive his right to an attorney and (2) the ALJ failed to properly consider the opinion of the examining physician.

The undersigned concludes that the hearing decision should be reversed and this case remanded to the Commissioner of Social Security for further proceedings consistent with these findings and conclusions.

## Legal Standards

Judicial review in social security cases is limited to determining whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether Commissioner applied the proper legal standards to evaluate the evidence. *See* 42 U.S.C. § 405(g); *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). Substantial evidence is "more than

a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *accord Copeland*, 771 F.3d at 923. The Commissioner, rather than the courts, must resolve conflicts in the evidence, including weighing conflicting testimony and determining witnesses' credibility, and the Court does not try the issues *de novo*. *See Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995); *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994). This Court may not reweigh the evidence or substitute its judgment for the Commissioner's but must scrutinize the entire record to ascertain whether substantial evidence supports the hearing decision. *See Copeland*, 771 F.3d at 923; *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988). The Court "may affirm only on the grounds that the Commissioner stated for [the] decision." *Copeland*, 771 F.3d at 923.

"In order to qualify for disability insurance benefits or [supplemental security income], a claimant must suffer from a disability." *Id.* (citing 42 U.S.C. § 423(d)(1)(A)). A disabled worker is entitled to monthly social security benefits if certain conditions are met. *See* 42 U.S.C. § 423(a). The Act defines "disability" as the inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or last for a continued period of 12 months. *See id.* § 423(d)(1)(A); *see also Copeland*, 771 F.3d at 923; *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985).

"In evaluating a disability claim, the Commissioner conducts a five-step sequential analysis to determine whether (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity." *Audler v. Astrue*, 501 F.3d 446, 447-48 (5th Cir. 2007).

The claimant bears the initial burden of establishing a disability through the first four steps of the analysis; on the fifth, the burden shifts to the Commissioner to show that there is other substantial work in the national economy that the claimant can perform. *See Copeland*, 771 F.3d at 923; *Audler*, 501 F.3d at 448. A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *See Copeland*, 771 F.3d at 923; *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

In reviewing the propriety of a decision that a claimant is not disabled, the Court's function is to ascertain whether the record as a whole contains substantial evidence to support the Commissioner's final decision. The Court weighs four elements to determine whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *See Martinez*, 64 F.3d at 174.

The ALJ has a duty to fully and fairly develop the facts relating to a claim for disability benefits. *See Ripley*, 67 F.3d at 557. If the ALJ does not satisfy this duty, the resulting decision is not substantially justified. *See id.* However, the Court does not hold the ALJ to procedural perfection and will reverse the ALJ's decision as not supported by substantial evidence where the claimant shows that the ALJ failed to fulfill the duty to adequately develop the record only if that failure prejudiced Plaintiff, *see Jones v. Astrue*, 691 F.3d 730, 733 (5th Cir. 2012) – that is, only if Plaintiff's substantial rights have been affected, *see Audler*, 501 F.3d at 448. "Prejudice can be established by showing that additional evidence would have been produced if the ALJ had fully developed the record, and that the additional evidence might have led to a different decision." *Ripley*, 67 F.3d at 557 n.22. Put another way, Plaintiff "must show that he could and would have adduced evidence that might have altered the result." *Brock v. Chater*, 84 F.3d 726, 728-29 (5th Cir. 1996).

## Analysis

I. <u>Plaintiff knowingly and intelligently waived his right to representation.</u>

Plaintiff contends that he did not knowingly and intelligently waive his right to counsel at the administrative hearing because his severe mental impairments and limitations precluded him from doing so.

A claimant has a statutory right to representation at an administrative hearing. *See* 42 U.S.C. § 406; 20 C.F.R.§ 404.1705; 20 C.F.R. § 416.1505; *Castillo v. Barnhart*, 325 F.3d 550, 552 (5th Cir. 2003). Any waiver of this right must be knowingly and

intelligently effected. *See Gullett v. Chater*, 976 F. Supp. 614, 620 (E.D. Tex. 1997) (citing *Brock v. Chater*, 84 F.3 726, 729 n.1 (5th Cir. 1996)); *Freeman-Park v. Barnhart*, 973 F. Supp. 2d 597, 601 (E.D. Tex. 2006).

Plaintiff does not dispute that he received written notice of the right to representation before the scheduled hearing with the ALJ. And the record reflects that Plaintiff received a "Notice of Disapproved Claim," dated March 30, 2015, in which Plaintiff was advised that he could have someone, including a lawyer, represent him in any appeal or new application and that free legal services may be available to him. *See* Dkt. No. 12-1 at 181. Plaintiff also received a Notice of Hearing on October 7, 2016, which included a detailed two-page pamphlet regarding a claimant's right to representation. *See id.* at 202-03.

Nor does Plaintiff contend that he did not receive oral notification of the right to representation. After giving a claimant written notice prior to the hearing, "[t]he ALJ should then provide oral notification at the hearing to ensure that a claimant who appears pro se at a hearing has been made aware of the options for obtaining counsel so that her or his waiver is knowingly and intelligently effected." *Freeman-Park*, 973 F. Supp. 2d at 621 (citing *Frank v. Chater*, 924 F. Supp. 416, 426 (E.D.N.Y.1996)); *Hearings, Appeals, and Litigation Law Manual* (HALLEX) I-2-1-80, I-2-6-52-B. Additionally, at the hearing, the ALJ should ascertain whether claimant had a "meaningful opportunity to secure counsel and, if not, consider adjourning the hearing

-6-

to provide that opportunity." *Clark v. Schweiker*, 652 F.2d at 403 (citing *Frank*, 924 F. Supp. at 426).

Here, the ALJ addressed Plaintiff's right to representation during the opening statement at the hearing:

> ALJ:  I do have to tell you prior to starting that you are entitled to have a representative. And if you need time to get one, I can continue the case and have you look for a representative. And that representative, of course, you're familiar because you had a hearing before. [Will] prepare you for the hearing, go over, make sure we have all the medical records and [they] actually ask you the questions at the hearing. The other way is for me to ask the questions, and I will make a decision based on the record. And people do it either way, but I'm not allowed to recommend a way. So I'd like to know. Have you thought about that?
>
> CLMT: I'll just do it, represent myself I guess.
>
> ALJ:  Okay. That's not unusual. People do that.
>
> CLMT: I don't know how, but –
>
> ALJ:  No, no, I'll do it. I'll be acting as – I'll ask you all the questions and everything. Don't worry about it. I'll make sure we get the record complete.

Dkt. No. 12-1 at 80-81.

Plaintiff argues the ALJ assumed that, because Plaintiff had a previous hearing, Plaintiff understood his right to counsel and, as a result, the ALJ did not question whether Plaintiff had received the notice to right to counsel and whether he understood what that meant. Plaintiff also argues that the ALJ assumed that Plaintiff's statement "I don't know how" meant he did not know how to proceed with giving testimony and

that the ALJ erred by not questioning whether Plaintiff understood his rights and proceeded with the hearing.

But Plaintiff does not challenge the adequacy of the notices of his right to representation at the social security hearing. Instead, Plaintiff argues that the record shows "Plaintiff could not have intelligently waived his right to counsel as it is unlikely that he had the mental capacity to understand that right and the consequences of waiving it." Dkt. No. 15 at 5. Plaintiff argues that he testified and reported severe physical and mental impairments, and Plaintiff cites, without argument or explanation, to numerous records in the administrative record. *See* Dkt. No. 15 at 5. Plaintiff also argues that the findings of consultive examiner Desiree' Kilcrease-Fleming, Ph.D. show that he did not have the mental capacity to intelligently waive the right to counsel because Dr. Kilcrease-Fleming found that he had marginal insight and poor judgment; his ability to make complex, age-appropriate occupational, personal, and social adjustments appeared to be compromised; and his complex reasoning skills appeared to be compromised. *See* Dkt. No. 12-2 at 661.

The mental health treatment notes show that Plaintiff consistently reported doing "good" and that mental status examinations generally showed mild or unremarkable findings. *See* Dkt. No. 18 at 4 (listing numerous record references). And Plaintiff's mental health treatment notes from November 2015 to November 2016 consistently show Plaintiff had adequate grooming, intact memory, cooperative behavior, normal speech, organized thoughts, normal attention, and normal mood, affect, and behavior. *See* Dkt. No. 12-2 at 133, 143-218, 609, 1205-1305.

As to activities of daily living, Plaintiff reported that he lives alone, cleans his room, watches television, prepares meals, washes dishes, does laundry, uses public transportation, shops, manages his own finances, draws, listens to the radio, and speaks with family members on the phone. *See* Dkt. No. 12-1 at 271, 275, 277-79, 320-24; *see also Leggett v. Chater*, 67 F.3d 558, 565 n.12 (5th Cir. 1995) ("It is appropriate for the Court to consider the claimant's daily activities when deciding the claimant's disability status.").

And the undersigned notes that Plaintiff had previously been represented by counsel in this proceeding, and the representation was withdrawn by notice dated June 27, 2016, *see id.* at 188, 196, and that Plaintiff is also a high school graduate.

Because there is substantial evidence in the record to show that Plaintiff had the mental capacity to understand his right concerning representation at the social security hearing, the undersigned finds that Plaintiff's waiver of that right was made knowingly and intelligently.

II.   The ALJ's RFC is not supported by substantial evidence.

Plaintiff argues that, by rejecting all of the medical opinions concerning Plaintiff's mental limitations, the ALJ had no legitimate basis from which to formulate a valid RFC.

In making the RFC determination, the ALJ gave the examining psychiatrist's opinion little weight. As the ALJ noted, Dr. Kilcrease Fleming opined that Plaintiff could understand, carry out, and remember simple instructions but his ability to make complex decisions appeared compromised. The ALJ also noted that Dr. Kilcrease-

Fleming found that Plaintiff could experience difficulties carrying out multi-step instruction; sustaining attention, concentration, or persistence in work-related activities; maintaining effective social interaction on a consistent and independent basis with coworkers, supervisors, and the public; and coping with the pressures of a competitive work setting. *See id.* at 32; *see also* Dkt. No. 12-2 at 657-662 (Dr. Kilcrease-Fleming's report). But the ALJ explained that he gave Dr. Kilcrease-Fleming's opinion "little weight" because Dr. Kilcrease-Fleming only examined Plaintiff on one occasion and because her opinion is inconsistent with that examination, as well as Plaintiff's reported abilities and unremarkable mental status examinations.

The ALJ also considered the opinions of four non-examining State agency medical consultants.

Two non-examining State agency medical consultants evaluated Plaintiff's physical impairments. At the initial level, Andrea Fritz, M.D., opined that Plaintiff had the physical RFC to perform the full range of medium work. *See* Dkt. No. 12-1 at 31, 138-140. On reconsideration, Kim Rowlands, M.D., affirmed Dr. Fritz's opinion. *See id.* at 31, 154-55.

The other two State agency medical consultants evaluated Plaintiff's mental impairments. At the initial level, Matthew Wong, Ph. D., found that Plaintiff had moderate limitations with regard to his activities of daily living, maintaining social functioning, and maintaining concentration, persistence, or pace. Dr. Wong opined that Plaintiff could understand, remember, and carry out only simple instructions; make decisions; concentrate for extended periods; interact with others; and respond to

changes. *See* Dkt. No. 12-1 at 31, 140-42. At the reconsideration level, Leela Reddy, M.D., affirmed Dr. Wong's opinion. *See id.* at 31, 151-53. The ALJ gave "some weight" to those opinions "to the extent that they are consistent with the objective evidence as a whole," but found "the record is inconsistent with the moderate limitations" found by the non-examining State agency medical consultants. *See id.* at 31. The ALJ did not refer to these opinions in deciding to give the examining psychiatrist's opinion "little weight."

The ALJ found that Plaintiff had the RFC to perform the full range of medium work. *See* Dkt. No. 12-1 at 31. He did not include any mental limitations in the RFC.

The Fifth Circuit has "held that an ALJ may not – without opinions from medical experts – derive the applicant's residual functional capacity based solely on the evidence of his or her claimed medical conditions," and "an ALJ may not rely on his own unsupported opinion as to the limitations presented by the applicant's medical conditions." *Williams v. Astrue*, 355 F. App'x 828, 832 n.6 (5th Cir. 2009) (citing *Ripley*, 67 F.3d at 557)); *see also Moreno v. Astrue*, No. 5:09-cv-123-BG, 2010 WL 3025525, at *3 (N.D. Tex. June 30, 2010), *rec. adopted,* 2010 WL 3025519 (N.D. Tex. Aug. 3, 2010) (explaining that, without expert medical interpretation, "evidence describing the claimant's medical conditions is insufficient to support an RFC determination").

In this case, the ALJ impermissibly relied on his own lay opinion, derived from his interpretation of the medical evidence and not that of a medical expert, to determine the effects of Plaintiff's mental impairments on Plaintiff's ability to work.

*See Frank v. Barnhart,* 326 F.3d 618, 622 (5th Cir. 2003) (ALJs "must be careful not to succumb to the temptation to play doctor" or make their own independent medical assessments.) (quoting *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990)). The ALJ cited no expert who opined that Plaintiff was capable of performing the full range of medium work with no mental limitations. *See* Dkt. No. 12-1 at 29-32.

An ALJ may weigh competing medical opinions, *see Taylor v. Astrue*, 706 F.3d 600, 603 (5th Cir. 2012), but may not substitute his lay opinion for the uncontroverted medical opinion of the examining psychiatrist who opined concerning the effects of Plaintiff's mental impairments, *see Williams*, 355 F. App'x at 832; *see also Morales v. Apfel*, 225 F.3d 310, 317 (3rd Cir. 2000) ("The ALJ must consider the medical findings that support a treating physician's opinion that the claimant is disabled. In choosing to reject the treating physician's assessment, an ALJ may not make 'speculative inferences from medical reports' and may reject 'a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion.") (citations omitted). Because the ALJ rejected the only medical expert evidence concerning the effects of Plaintiff's mental impairments, the ALJ's RFC determination is not supported by substantial evidence.

Nevertheless, because "[p]rocedural perfection in administrative proceedings is not required" and a court "will not vacate a judgment unless the substantial rights of a party are affected," Plaintiff must show he was prejudiced by the ALJ's failure to rely on medical opinion evidence in assessing her mental RFC. *See Mays v. Bowen*, 837 F.2d

1362, 1364 (5th Cir. 1988). To establish prejudice, Plaintiff must show that the ALJ's failure to obtain a medical opinion assessing the effects his mental impairments had on his RFC casts doubt onto the existence of substantial evidence supporting his disability determination. *See McNair v. Comm'r of Soc. Sec.*, 537 F. Supp. 2d 828, 827 (N.D. Tex. 2009) ("Procedural errors in the disability determination process are considered prejudicial when they cast doubt onto the existence of substantial evidence in support of the ALJ's decision") (citing *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988)).

The ALJ's failure to consider the examining psychiatrist's and consulting psychiatrists' opinions on Plaintiff's mental limitations is material. The ALJ concluded that Plaintiff could perform medium work with no mental limitations. If the ALJ afforded the examining psychiatrist's opinion some weight, he could conclude that Plaintiff is unable to work. This is especially apparent since the burden is on the Commissioner at Step 5 to identify gainful employment available in the national economy that the claimant is capable of performing. *See Myers v. Apfel*, 238 F.3d 617, 621-22 (5th Cir. 2001) (holding that remand was required when the ALJ failed to consider all evidence from a treating source and failed to present good cause for rejecting it).

The ALJ erred by disregarding relevant medical opinions when determining Plaintiff's RFC and Plaintiff was harmed by that error.

## Recommendation

The hearing decision should be reversed and this case remanded to the Commissioner of Social Security for further proceedings consistent with this opinion.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: July 26, 2019

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE